IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division
*In Admiralty*

**CMA CGM (AMERICA) LLC,**

      **Plaintiff,**

v.                                          Case No.: 2:24-cv-608

**AMAR TRANSPORT INC.,**

Serve: Amar Transport, Inc.
       7290 Major Mackenzie Dr.
       W, Kleinburg, ON L0J 1C0

      **Defendant.**

## COMPLAINT

Comes now CMA CGM (America) LLC, by counsel, and moves this honorable court for judgment against defendant Amar Transport Inc. and alleges, as follows:

1. This case arises from a fire that destroyed a cargo of new automobile tires within a shipping container in Defendant's possession, custody, and control at its facility in Canada.

### The Parties

2. CMA CGM (America) LLC ("CMA CGM") is a corporation formed and incorporated under the laws of New Jersey with its principal place of business at 1 CMA CGM Way, Norfolk VA, 23502.

3. Defendant Amar Transport Inc., ("Amar" or the "motor carrier") is a corporation organized under the laws of Ontario, Canada with a principal place of business at 7290 Major Mackenzie Dr. W, Kleinburg, ON L0J 1C0.

Jurisdiction & Venue

4. This Court has admiralty jurisdiction under 28 U.S.C. § 1333, and this case arises within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5. In the alternative, this Court has jurisdiction under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, inclusive of attorneys' fees and cost as provided by contract.

6. This action arises out of a maritime contract between the parties relating to the transportation of shipping containers, which provides, in relevant part, for "exclusive jurisdiction in the United States District Court for the Eastern District of Virginia, Norfolk Division" and provides the basis for jurisdiction and venue in this Court.

The Contract

7. On April 13, 2023, Amar entered into a "Motor Carrier Services Agreement" with CMA CGM ("the Agreement").

8. By its terms, CMA CGM entered the Agreement on behalf of CMA CGM S.A. (a company organized under the laws of France, whose principal place of business is at 4 Quai D'Arenc, 13002, Marseille, France) and APL Co. Pte Ltd. (A company organized under the laws of Singapore, for and on behalf of itself and American President Lines, LLC, a company organized under the laws of Delaware) where each entity may be referred to as a "shipping line" or collectively as the "shipping lines."

9. Under the Agreement, Amar agreed to provide or arrange motor carrier services to the shipping lines and their customers pursuant to transportation orders offered by CMA CGM and accepted by Amar.

10. The Agreement states, in part:

[13. Law and Jurisdiction] In case of a dispute arising under or relating to this Agreement, Motor Carrier and the Shipping Lines all agree to the exclusive jurisdiction in the United States District Court for the Eastern District of Virginia, Norfolk Division, or if the case cannot be maintained in that Court, then in the State Courts of the Commonwealth of Virginia for the City of Norfolk. This Agreement shall be construed and governed by the laws of the Commonwealth of Virginia…

* * *

[16. Indemnification] Motor Carrier agrees to defend, hold harmless, pay reasonable costs and attorneys' fees, and fully indemnify each Shipping Line (without regard to whether the alleged liability is vicarious, implied in law, or otherwise alleged), against any and all claims, suits, losses, damages or liabilities, caused by or resulting from the Motor Carrier's negligent acts or omissions, related to any of the following: (i) bodily injury, (ii) death, (iii) property damage, (iv) loss or damage to cargo …

<u>The Loss</u>

11. On November 27, 2023, Container No. SEKU6320638 ("the Container") departed Jakarta, Indonesia, the origin port, stuffed with 938 new rubber automobile tires aboard M/V APL CAIRO.

12. The Container was secured with seal No. C9054207, as reflected on Bill of Lading No. DJA1168909.

13. Following the Container's arrival at the port of Halifax, Nova Scotia, it was transported by rail to the CN Montreal Tasch rail yard, arriving on January 24, 2024.

14. While in the CN rail yard, it was discovered that the Container had structural damage in or near the gooseneck tunnel.

15. The damaged gooseneck tunnel structure prevented the container from being loaded and secured to a chassis for road transportation and needed to be repaired before delivery to the consignee.

16. Upon information and belief, no work or repairs to the Container were made or attempted prior to Amar's possession of the Container.

17. On January 26, 2024, Mr. Danish, on behalf of Amar, agreed to move the Container on a flatbed to the Amar facility located at 5421 Bd Cléroux, Laval, QC H7T 2E9, Canada, and to repair the Container at Amar's facility.

18. Amar picked up the Container from the CN rail yard on January 26, 2024, at or about 8:10 p.m. and transported it to the Amar facility arriving the same night, where it remained in Amar's exclusive possession, custody, and control.

19. At the time Amar made the pick up from the CN rail yard, the cargo and Container were in good condition and there was no fire within the Container.

20. Upon information and belief, while the Container was in Amar's possession, custody, and control for the purpose of repairing it for transportation to the consignee, Amar performed cutting, welding, or other work on the exterior of the Container while it was sealed and loaded with cargo causing the cargo of tires to ignite and catch fire.

21. The contents of the Container were first discovered to be on fire when in Amar's possession, custody, and control at Amar's facility.

22. During the morning of January 27, 2024, while the Container was in the possession, custody, and control of Amar, Mr. Ben Pillay (Terminal Manager for Amar (Laval)) received a call from the yard staff to report that the Container was on fire.

23. Firefighters were notified and responded to extinguish the fire within the Container.

24. On January 27, 2024, at or about 11:57 a.m., Amar reported via email to CMA CGM that the Container was on fire.

25. Among other things, firefighters punctured holes into the bare sides of the Container to extinguish the fire and then removed the tires from the Container after the fire was extinguished.

26. The fire destroyed the cargo, which was a total loss.

27. The fire caused significant damage to the Container, which significantly diminished the value of the Container.

28. The Container and cargo were surveyed on February 2 and 5, 2024.

29. Upon information and belief, the fire was caused by cutting, welding or other work on Container structures in or near the gooseneck tunnel while in Amar's possession, custody, and control.

30. The customary, preferred, and safe method of repairing a bent or damaged structures of a loaded and sealed container is to utilize mechanical forces applied by a hydraulic ram or other mechanical means to push and or pull the damaged portion back into position, not to perform work, including cutting, welding or other work, on the exterior of a sealed container for which no reasonable means of fire detection or prevention inside the sealed Container may be employed.

## COUNT I – Bailment

31. CMA CGM repeats and reiterates the prior allegations contained within paragraphs 1 – 30, as if fully restated herein.

32. At the time Defendant Amar took custody and control of the Container from the CN rail yard, the cargo and the Container were in good condition except for the damaged structures in or near the gooseneck tunnel, which required repair.

33. Amar had a duty to care for property while it was in its custody and control and to return it in the same good order and condition as when received.

34. Amar failed to exercise reasonable care for the Container and, upon information and belief, negligently performed cutting, welding or other work on the outside of the Container while it was sealed and loaded, causing the cargo to ignite and catch fire, causing the cargo to be a total loss, and damaging the container itself.

35. As a direct and proximate result of Amar's failure to exercise reasonable care, Amar was unable to deliver the Container in good order and therefore failed to do so because the cargo and Container were destroyed while in Amar's custody.

36. As a direct and proximate cause of Amar's actions and negligence, CMA CGM was required to hire a surveyor to assess the damage caused by Amar, and incurred expenses in doing so.

## COUNT II – Negligence

37. CMA CGM repeats and reiterates the prior allegations contained within paragraphs 1 – 36, as if fully restated herein.

38. Amar took possession of the Container for the purpose of repairing the damaged structures in or near the gooseneck tunnel at Amar's facility, as agreed by Amar.

39. Amar failed to exercise reasonable care in effecting the repair to the Container or in other respects, and contrary to accepted industry practice and standards, upon information and belief, used a torch and/or welder to work on the Container rather than a hydraulic ram or other mechanical means.

40. As a direct and proximate cause of Amar's actions and negligence, the Container and cargo were damaged or destroyed.

## COUNT III – Indemnity

41. CMA CGM repeats and reiterates the prior allegations contained within paragraphs 1 – 40, as if fully stated herein.

42. The Agreement requires Amar to provide indemnity and hold harmless CMA CGM against any and all claims, suits, losses, damages, or liabilities, caused by or resulting from Amar's negligent acts or omissions relating to property damage or loss or damage to cargo.

43. Amar's negligent acts, namely causing the fire that damaged the Container and destroyed the cargo, caused the damages and loss of said Container and cargo.

44. As a result of the losses to cargo, CMA CGM was obligated to compensate the consignee for the loss of the cargo.

45. Although requested, Amar has refused to compensate CMA CGM for this loss as required by the Agreement.

46. CMA CGM has been required to incur legal fees and expenses in its efforts to recover this loss, for which Amar is responsible under the Agreement.

47. Amar owes indemnity to CMA CGM in the full amount of its loss, including, but not limited to the loss of cargo, damage to the Container, survey and other expenses, reasonable costs and attorneys' fees, as provided for under the Agreement.

## COUNT IV – Subrogation

48. CMA CGM repeats and reiterates the prior allegations contained within paragraphs 1 – 47, as if fully stated herein.

49. In exchange for the compromise and payment of the consignee's claim, CMA CGM is subrogated to all of the consignee's rights and remedies regarding its losses and demands full payment of the entire amount.

50. CMA CGM is entitled to recover the full amount of its consignee's losses.

## Conclusion

**WHEREFORE**, CMA CGM prays that judgment be entered against Defendant Amar Transport Inc. for the value of the damages and all of its losses caused by Amar to which it is entitled, including, but not limited to, the loss of cargo, damage to the Container, survey and other expenses, reasonable costs and attorneys' fees, along with interest, in an amount exceeding U.S.D. $75,000.00 and that this Court grant Plaintiff such other and further relief as the Court and justice may deem just and appropriate under the circumstances.

Dated this: October 11, 2024

**CMA CGM (America) LLC**

_____
Steven M. Stancliff (VSB No. 73853)
James J. Levantino (VSB No. 97082)
VENTKER HENDERSON STANCLIFF, PLLC
256 W. Freemason St. Norfolk, VA 23510
Tel: (757) 625-1192
sstancliff@ventkerlaw.com
jlevantino@ventkerlaw.com
*Counsel for CMA CGM (America) LLC*